DANIEL GIRALDI, a Minor, by Debra Giraldi, his Mother and Next Friend, *et al.*, Plaintiffs-Appellants, v. JAMES LAMSON *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—89—1316

Opinion filed November 5, 1990.

La Salle Law Centre, of Chicago (John Thomas Moran, Jr., and Barry S. Grossman, of counsel), for appellants.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, James K. Horstman, Alfred A. Spitzzeri, and C. Barry Montgomery, of counsel), for appellee Septran, Inc.

Modesto, Reynolds & McDermott, of Chicago (Michael L. Lulich, of counsel), for appellee Community Consolidated School District No. 62.

JUSTICE O'CONNOR delivered the opinion of the court:

Daniel Giraldi, a minor, by Debra and Thomas Giraldi, Daniel's parents, filed a complaint against James Lamson, Community Consolidated School District No. 62 (School District), and Septran, Inc. (Septran), for damages allegedly resulting from Lamson committing a series of sexual assaults upon Daniel. Daniel's cause of action is presently pending against all three defendants in the circuit court of Cook County. Debra and Thomas joined Daniel's cause of action and asserted their own cause of action for intentional infliction of emotional distress against the School District and Septran.

On July 22, 1986, the plaintiffs filed their initial complaint, which contained five counts. Subsequently, the School District and Septran answered the first four counts and jointly moved to dismiss count V, which purports to allege Debra and Thomas' cause of action for the intentional infliction of emotional distress. On May 2, 1989, the trial court heard arguments regarding the motion to dismiss count V and then dismissed it with prejudice on the grounds that a cause of action was not stated. For the following reasons set forth below, we affirm the trial court's dismissal of count V.

The factual allegations of Debra and Thomas' complaint are as follows. Daniel Giraldi was enrolled in kindergarten at an elementary school in the School District from September of 1983 to June of 1984. The School District had a written contract with Septran to transport children to and from Daniel's school. Daniel was the first child picked up in the morning by a Septran bus, which was driven by James Lamson, a Septran employee. From September 1983 through June 1984, Lamson allegedly committed various sexual assaults upon Daniel while acting within the course of his employment. These events were not discovered until March of 1985, when Lamson was arrested and

pled guilty to aggravated criminal assault. As a result of discovering these events, Debra and Thomas sought psychological and psychiatric treatment for their agitation, anger, and anxiety.

Debra and Thomas generally allege that the School District carelessly and negligently entered into a contract for transportation with Septran; carelessly and negligently failed to investigate Lamson's background; carelessly and negligently allowed Lamson to remain as a bus driver when the School District knew or should have known of Lamson's propensities; carelessly and negligently failed to investigate Lamson's background when the School District had been advised of Lamson's conduct; carelessly and negligently failed to take the necessary precautions to protect Daniel on Lamson's bus; carelessly and negligently failed to employ the proper supervising techniques in supervising the contract for transportation with Septran; and otherwise carelessly and negligently maintained and supervised the contract for transportation with Septran when the School District knew or should have known that danger to Daniel was imminent. In addition in count V, Debra and Thomas alleged that the School District intentionally failed to investigate a report that a School District teacher had been told that Lamson had been seen hugging Daniel on numerous occasions.

Furthermore, it is alleged that Septran "intentionally failed to investigate, act upon said information, nor [sic] take any affirmative action to determine why said bus was parked." Debra and Thomas also allege that Septran carelessly and negligently failed to investigate Lamson's background; carelessly and negligently failed to employ the proper procedures for investigating Lamson; carelessly and negligently employed Lamson; carelessly and negligently allowed Lamson to remain as an employee when Septran knew or should have known of Lamson's propensities; carelessly and negligently allowed Lamson to be a bus driver for elementary school when Septran knew or should have known of Lamson's propensities; carelessly and negligently failed to take the necessary precautions to protect Daniel on Lamson's bus; carelessly and negligently allowed Lamson to drive a bus owned and operated by Septran when Septran knew or should have known that danger to Daniel was imminent; carelessly and negligently allowed Lamson to remain as a bus driver for Septran when Septran knew or should have known that danger to Daniel was imminent; and carelessly and negligently managed, operated, hired, supervised and controlled Lamson when Septran knew or should have known that danger to Daniel was imminent. Debra and Thomas also specifically allege that telephone calls were made to Septran some-

time between September 1983 and June 1984 that informed Septran that Lamson and his school bus were parked on a side street after picking Daniel up in the morning and not proceeding on the normal bus route.

■ Debra and Thomas argue that allegations in count V state a cause of action for the intentional infliction of emotional distress against the School District and Septran. We disagree. A cause of action for the tort of intentional infliction of emotional distress exists when: (1) the conduct involved is truly extreme and outrageous; (2) the actor either intends or knows that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct does, in fact, cause severe emotional distress. (*McGrath v. Fahey* (1988), 126 Ill. 2d 78, 86, 533 N.E.2d 806.) This standard is so stringent that it is met only if the distress inflicted is so severe that no reasonable person could be expected to endure it. (*E.g., Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765.) The cases that have met this pleading standard have included a coercive factor, such as an employer's attempt to cause an employee to commit an illegal act (*Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829), or the existence of a pattern of harassment involving extreme and continuous calls and letters of a threatening and profane or obscene nature (*Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 392 N.E.2d 154). *Grey v. First National Bank* (1988), 169 Ill. App. 3d 936, 943, 523 N.E.2d 1138, *appeal denied* (1988), 122 Ill. 2d 574, 530 N.E.2d 245, *cert. denied* (1990), 493 U.S. 1020, 107 L. Ed. 2d 739, 110 S. Ct. 719.

First, Debra and Thomas argue that the School District's failure to investigate a report that Lamson was seen "hugging" Daniel; Septran's failure to investigate that Daniel's school bus was seen several times parked on a side street after picking Daniel up; and the School District's and Septran's failure to investigate Lamson's background constitute extreme and outrageous conduct. We disagree. Debra and Thomas cite *McGrath v. Fahey* (1988), 126 Ill. 2d 78, 533 N.E.2d 806, as support for their contention that the School District's and Septran's alleged conduct constituted intentional infliction of emotional distress. In *McGrath*, the plaintiff contracted to sell certain real estate to the defendant bank owner. Subsequently, the parties accused each other of fraud, the bank refused to transfer $1 million in certificates of deposit, owned by plaintiff, from the bank as plaintiff requested, and the plaintiff advised the bank of his heart condition. When the plaintiff also told the bank's attorney that he was becoming extremely anxious about the matter, the bank's attorney said that the

plaintiff must assign his real estate interest to the bank, or else the bank would financially ruin him. Later, plaintiff suffered a massive heart attack and underwent open heart surgery. Thereafter, the bank continued refusing to transfer the certificates of deposit. When the bank finally transferred the certificates, the bank dishonored plaintiff's eight drafts drawn on a checking account. The *McGrath* court held that the defendant's conduct was extreme and outrageous, reasoning that "the degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous. The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *McGrath*, 126 Ill. 2d at 86-87.

■ We do not find Debra and Thomas' contention that the School District and Septran had power, authority, or control over them persuasive because the School District and Septran were not coercing Debra and Thomas, and because the School District and Septran were not harassing Debra and Thomas. We also do not find that the School District's and Septran's failure to investigate Lamson's background extreme and outrageous conduct. While the School District's and Septran's conduct may have been negligent *vis-a-vis* Daniel and caused Daniel extreme distress (which is a matter to be determined by the trial court), we reject the contention that the School District's and Septran's conduct or failure to act were extreme and outrageous conduct *vis-a-vis* Debra and Thomas.

■ Second, we reject the contention that the School District and Septran intended to inflict emotional distress or knew that there was a high probability that their conduct would cause Debra and Thomas distress, because neither the School District nor Septran knew that its failure to investigate would have discovered criminal behavior. Moreover, Debra and Thomas' allegations regarding Septran's and the School District's alleged carelessness and negligence, *i.e.*, that they carelessly and negligently failed to investigate Lamson's background, do not allege that Septran's and the School District's acts were *intentional* or that the School District and Septran knew that severe emotional distress was certain or substantially certain to result. *Neuberg v. Michael Reese Hospital & Medical Center* (1978), 60 Ill. App. 3d 679, 685, 377 N.E.2d 215 (allegations of reckless, willful and wanton misconduct in a complaint filed by parents of two boys who developed cancer several years after being treated with radiation before such treatment was linked with thyroid cancer without allegations that

defendants committed the acts with the intent to inflict severe emotional distress or that they knew that severe emotional distress was certain or substantially certain to result were held insufficient, and failed to state a cause of action for the infliction of emotional distress).

■■ ■ Alternatively, Debra and Thomas argue that they have sufficiently pled that the School District and Septran are vicariously liable for Lamson's extreme and outrageous acts. Again, we disagree. While it is true that under the doctrine of *respondeat superior* an employer may be liable for the negligent, willful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the employer's business, the employer is not liable to an injured third party where the acts complained of were committed solely for the benefit of the employee. (*Webb v. Jewel Cos.* (1985), 137 Ill. App. 3d 1004, 1006, 485 N.E.2d 409; *Randi F. v. High Ridge YMCA* (1988), 170 Ill. App. 3d 962, 964, 524 N.E.2d 966.) Although the issue of whether an employee has departed from the scope of employment by acting purely for his own interest, rather than at least in part for the employer, is normally a question for the jury (*Randi F. v. High Ridge YMCA* (1988), 170 Ill. App. 3d 962, 964-65, 524 N.E.2d 966), we find that count V is factually and legally insufficient because Debra and Thomas merely conclusively pled that Lamson was within the course and scope of his employment and stated no facts supporting the allegation that Lamson was furthering his employer's business.

After considering Debra and Thomas' well-pled facts as true and all reasonable inferences which could be drawn therefrom, no such facts have been pled which, if proved, would justify recovery against the School District and Septran for the intentional infliction of emotional distress alleged in count V of their complaint. Therefore, the trial court's order that dismissed with prejudice Debra and Thomas' cause of action for intentional infliction of emotional distress against the School District and Septran is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.