JAMES JOHNSON *et al.*, Plaintiffs-Appellants, v. ROSEMARIE MERS, d/b/a Mers Restaurant, Defendant and Counterplaintiff-Appellant (The Village of Island Lake, Defendant-Appellee and Counterdefendant-Appellee; Rena Jensen, Defendant and Counterdefendant).

Second District    Nos. 2—95—1234, 2—95—1265 cons.

Opinion filed April 17, 1996.

374

Richard S. Mittelman, of Morgan, Mittelman & Rapin, Ltd., of Lake Zurich, for appellants James Johnson, Jeanine Johnson and Joshua Gray Johnson.

Marc F. Benjoya, Corey H. Grauer, Jennifer A. Keller, and Carolyn Quinn, all of Cassiday, Schade & Gloor, of Waukegan, for appellant Rosemarie Mers.

Michael W. Tootooian, of Ancel, Glink, Diamond, Cope & Bush, P.C., of Chicago, for appellee.

JUSTICE INGLIS delivered the opinion of the court:
Plaintiffs, James Johnson (Johnson) and Joshua Gray Johnson, a

minor, by Jeanine Johnson, his mother and next friend, and counterplaintiff, Rosemarie Mers, d/b/a Mers Restaurant (Mers) (collectively referred to as plaintiffs), appeal the order of the circuit court of Lake County, which granted summary judgment in favor of defendant, the Village of Island Lake, Illinois (Island Lake). We affirm.

This case is before us as a result of events which occurred on July 13, 1993. On that date, Rena Jensen (Rena), a police officer for Island Lake, shot Johnson with her service revolver, seriously injuring him.

On July 13, 1993, both Rena and Johnson had attended a fundraiser at Mers where Rena consumed several alcoholic beverages. Rena quarreled with Johnson, and Johnson left and returned to his mobile home. After a short time, Rena also left and returned to Johnson's mobile home. Their quarrel continued, and Rena drew her service revolver and fired several shots into the ceiling. Both Rena and Johnson then allegedly struggled with the revolver, whereupon Rena shot Johnson in the head, causing permanent injuries.

On December 12, 1994, Johnson filed a fourth amended eight-count complaint against Island Lake, Mers, and Rena. Counts I and II were directed against Rena and alleged negligence and wilful and wanton misconduct. Count III was directed against Mers, alleging violation of the Dramshop Act (235 ILCS 5/6—21 (West 1994)). Count IV was directed against Mers and alleged loss of support. Counts V through VIII were directed against Island Lake and alleged wilful, wanton, and reckless misconduct, negligent hiring, negligent retention, and negligent entrustment. Mers filed a counterclaim seeking contribution against both Rena and Island Lake.

Island Lake moved for summary judgment, arguing that plaintiffs had failed to establish proximate causation. On August 31, 1995, the trial court granted Island Lake's motion for summary judgment against Johnson and against Mers on Mers' counterclaim. The trial court also struck the testimony of Scott Krajniak because plaintiffs had failed to disclose him as a Rule 220 expert witness. Both Johnson and Mers filed separate notices of appeal. We consolidated both appeals.

On appeal, Johnson argues that the trial court improperly granted summary judgment for Island Lake because there allegedly existed material issues of fact pertaining to Island Lake's actions in hiring and supervising Rena. Johnson also argues that the trial court erred in striking the testimony of Krajniak. Lastly, Mers argues that the trial court improperly granted summary judgment on its contribution claim against Rena and Island Lake.

We turn now to Johnson's first contention. Summary judgment is

properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Leschinski v. Forest City Steel Erectors*, 243 Ill. App. 3d 124, 127 (1993); 735 ILCS 5/2—1005(c) (West 1994). In ruling on the motion, the court is required to construe all evidentiary material strictly against the movant and liberally in favor of the respondent. *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 908 (1994).

The propriety of an order granting summary judgment is a question of law, and, as such, we review such orders *de novo*. *Pagano*, 257 Ill. App. 3d at 909. If, after reviewing the pleadings and evidentiary material before the trial court, the reviewing court determines that a material issue of fact exists or that the summary judgment was based on an erroneous interpretation of the law, then reversal is warranted. *Pagano*, 257 Ill. App. 3d at 909.

## I. NEGLIGENT HIRING

■ Plaintiffs contend that they presented sufficient facts to prove that Island Lake was negligent in hiring Rena and, thus, the grant of summary judgment was improper. It is well established that a cause of action exists against an employer for negligently hiring, or retaining in his employment, an employee he knew, or should have known, was unfit for the job so as to create a danger of harm to third persons. *Bates v. Doria*, 150 Ill. App. 3d 1025, 1030 (1986). An action for negligent hiring can be maintained even where an employee commits a criminal or an intentional act which is outside the scope of employment. *Carter v. Skokie Valley Detective Agency, Ltd.*, 256 Ill. App. 3d 77, 80 (1993). An employer must exercise the degree of care reasonably commensurate with the perils and hazards likely to be encountered in the performance of the employee's duties. See *Easley v. Apollo Detective Agency, Inc.*, 69 Ill. App. 3d 920, 932 (1979).

However, proximate cause is an essential element of any negligence action, and, although an employer may have negligently hired someone who caused harm to another, liability will only attach if the injuries were brought about by reason of the employment of the unfit employee. *Carter*, 256 Ill. App. 3d at 80. In determining whether there is a causal connection between the employer's negligence and the plaintiff's injuries, it is necessary to inquire whether the injury occurred by virtue of the employee's employment. *Carter*, 256 Ill. App. 3d at 80. Thus, the employment itself must create the situation where the employee's violent propensities harm the third person. *Carter*, 256 Ill. App. 3d at 80.

Generally, the existence of proximate cause is a question of fact for the jury. *Carter*, 256 Ill. App. 3d at 81. However, if the plaintiff's

evidence is wholly insufficient to establish that the employer's negligence proximately caused plaintiff's injuries, the employer is entitled to judgment as a matter of law. *Carter*, 256 Ill. App. 3d at 81.

■ In this case, even assuming that Island Lake may have been negligent in hiring Rena, Island Lake's actions were not the proximate cause of plaintiffs' injuries. Plaintiffs argue that if the Island Lake police department (ILPD) had not hired Rena, the altercation with Johnson would not have occurred. Plaintiffs' argument proceeds in this fashion: (1) Rena needed a firearm as a condition for her employment; (2) she did not yet have a "Firearm Owner's Identification" card (FOI); (3) the chief of police wrote a letter on Island Lake letterhead to the gun shop verifying she was a police officer; and (4) the ILPD trained her in the use of a firearm. Therefore, plaintiffs contend that Island Lake's actions were the proximate cause of their injuries.

However, there is no dispute that the firearm was purchased solely by Rena and not the ILPD. While at the time Rena purchased the firearm she did not have her FOI card, she previously applied for the card and, in fact, received it several weeks after the firearm was purchased. Thus, even if the ILPD discharged Rena, she still would have been able to retain her firearm.

Further, at the time of the shooting, Rena was not acting as a law enforcement agent. The shooting was a result of a personal argument between a boyfriend and a girlfriend. Rena was not on duty at the time of the incident, nor was she attempting to stop a crime from being committed or attempting to maintain the peace. Plaintiffs' injuries were not a result of a "natural and continuous sequence of events" set in motion by Island Lake's negligence and "unbroken by any effective intervening cause." See *Kemp v. Sisters of the Third Order of St. Francis*, 143 Ill. App. 3d 360, 361 (1986). Island Lake did not provide Rena with her firearm. Her possession of the firearm was not contingent on her status as a police officer for the ILPD. Further, she was not acting in any manner as an agent of the ILPD. Thus, the trial court properly granted summary judgment in favor of defendant on counts V through VII.

We recognize that plaintiffs have cited *Bonsignore v. City of New York*, 683 F.2d 635 (2d Cir. 1982), in support of their argument that Island Lake is liable for Rena's actions. In *Bonsignore*, a New York City police officer shot his wife (Bonsignore) and then shot himself. Bonsignore sued the police department, alleging that the city negligently failed to realize that the officer was dangerous and should not have been permitted to carry a gun and that the city failed to adopt or implement a sufficiently effective program of psychological

screening and monitoring for its police officers. *Bonsignore*, 683 F.2d at 636-37.

The jury found for Bonsignore on the second theory because the city had instituted several programs in an effort to identify and counsel officers suffering from emotional or mental disabilities. *Bonsignore*, 683 F.2d at 637. The court noted that based on the evidence presented the jury could have found that the city's system was ineffective. *Bonsignore*, 683 F.2d at 637. The court further found that the jury reasonably could have found that the city's negligence was the proximate cause of Bonsignore's injuries. The court noted that "[t]he City could reasonably have anticipated that its negligence in failing to identify officers who were unfit to carry guns would result in an unfit officer injuring *** a member of his own family." *Bonsignore*, 683 F.2d at 638.

However, we decline to follow the court's reasoning in *Bonsignore*. First, plaintiffs do not allege that Island Lake negligently failed to implement a plan to monitor its police officers. Further, we also disagree with the *Bonsignore* court's finding that the city's actions were the proximate cause of Bonsignore's injuries. As was noted above, after arguing with her boyfriend, Rena shot her boyfriend with a firearm which she purchased herself. Rena was not acting as a police officer at the time of the shooting. Thus, plaintiffs have failed to prove that Island Lake's actions were the proximate cause of plaintiffs' injuries.

## II. NEGLIGENT ENTRUSTMENT

■ Plaintiffs next argue that the trial court erred in granting summary judgment on count VIII, which alleged that defendant negligently entrusted Rena with her service revolver. An action for negligent entrustment consists of entrusting a dangerous article to another whom the lender knows, or should know, is likely to use it in a dangerous manner. *Zedella v. Gibson*, 165 Ill. 2d 181, 186 (1995). Section 308 of the Restatement (Second) of Torts provides:

> "It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." Restatement (Second) of Torts § 308 (1965).

Comment *a* to section 308 further states:

> "The words 'under the control of the actor' are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can

prevent the third person from using the thing or engaging in the activity." Restatement (Second) of Torts § 308, Comment *a*, at 100 (1965).

Thus, entrustment must be defined with reference to the right of control of the employer over the subject property, which, in the case at bar, is Rena's service revolver. See *Zedella*, 165 Ill. 2d at 187. If an employer does not have an exclusive right or superior right of control, no entrustment of the property can occur. *Zedella*, 165 Ill. 2d at 187. The mere fact that an employer facilitates the acquisition of the dangerous subject property, is, by itself, insufficient to support an action for negligent entrustment. See *Zedella*, 165 Ill. 2d at 188-94.

■ In the case at bar, the chief of the ILPD wrote a letter to a gun shop which facilitated Rena's acquisition of her service revolver before she was in possession of a valid FOI card. However, she subsequently received her FOI card and, thus, had a right, independent of her status as a police officer, to possess a firearm. The firearm was not owned by Island Lake, but had been purchased by Rena. Therefore, because Rena's service revolver was not in any way under the control of Island Lake, the trial court was correct in granting summary judgment in favor of Island Lake as to this count.

### III. GOVERNMENTAL IMMUNITY

While we have found that the trial court properly granted summary judgment in favor of Island Lake as to all counts, another independent basis exists for affirming the trial court's grant of summary judgment. Island Lake contends that it is immune from any liability arising out of any discretionary or supervisory acts or omissions because of the immunities set forth in the Local Governmental and Governmental Employees Tort Immunity Act (Immunity Act) (745 ILCS 10/1—101 *et seq.* (West 1994)).

■ The relevant sections of the Immunity Act are as follows:
Section 2—109 provides:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2—109 (West 1994).

Section 2—201 provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1994).

Section 3—108 provides:

"Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is li-

able for an injury caused by a failure to supervise an activity on or the use of any public property." 745 ILCS 10/3—108 (West 1994).

■ In order for Island Lake to avail itself of the immunities afforded by the Immunity Act, Island Lake's acts must have been discretionary and not ministerial. *Snyder v. Curran Township*, 167 Ill. 2d 466, 472-73 (1995). The distinction between discretionary and ministerial acts resists precise formulation; and the determination of whether acts are discretionary or ministerial must be made on a case-by-case basis. *Snyder*, 167 Ill. 2d at 474. However, it has been recognized that discretionary acts are those acts which are unique to a particular public office, while ministerial acts are those acts which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act. *Snyder*, 167 Ill. 2d at 474.

In the case at bar, plaintiffs allege liability based on the ILPD's hiring of a police officer. Such an action is inherently discretionary and is not performed on a given state of facts in a prescribed manner. In hiring a police officer, there are many factors which a police department must consider and evaluate. The hiring decision is not one which is made when certain specific factors are present, with no regard to the hiring officials' discretion.

Plaintiffs argue, however, that Island Lake's actions in hiring Rena were ministerial. In support thereof, plaintiffs contend that once Island Lake devised a hiring plan the ILPD no longer had discretion in whom it would hire. Rather, plaintiffs argue that carrying out the plan was a ministerial act for which liability could be imposed.

We disagree. While Island Lake did devise a hiring plan which would include the application process, a polygraph examination, psychological testing, physical testing, and interviews, the decision to hire an officer ultimately required the exercise of discretion. The decision to hire or not to hire a police officer is an inherently discretionary act and, thus, is subject to the immunities contained in the Immunity Act.

Plaintiffs argue, however, that the immunities provided by the Immunity Act are subject to an exception for wilful and wanton conduct and, thus, summary judgment as to plaintiffs' counts which alleged wilful and wanton conduct was in error. We note that there is a conflict as to whether sections 2—201 and 3—108 of the Immunity Act provide immunity from liability for injuries that were caused by the public entities' wilful and wanton conduct. While there are several cases which have held that sections 2—201 and 3—108 do

not provide immunity for wilful and wanton acts (see, *e.g., Munizza v. City of Chicago*, 222 Ill. App. 3d 50, 57 (1991); *Gilmore v. City of Zion*, 237 Ill. App. 3d 744, 750-52 (1992)), we believe those decisions were in error.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Payne v. Lake Forest Community High School District 115*, 268 Ill. App. 3d 783, 785 (1994). We must determine this intent from the language of the statute, and the statute must be evaluated as a whole. *Payne*, 268 Ill. App. 3d at 785. If the language of the statute is clear, the court will give it effect without turning to other statutory construction aids. *Payne*, 268 Ill. App. 3d at 785.

■ The specific language of sections 2—201 and 3—108 provides full immunity and does not contain an exception for wilful and wanton conduct. When the General Assembly intended to create a wilful and wanton exception to the immunity afforded by the Immunity Act, it specifically expressed that intent with language excepting wilful and wanton conduct. See 745 ILCS 10/2—202, 3—106, 3—109(c)(2), 4—105, 5—103(b) (West 1994). Other sections of the Immunity Act contain no such exception. See 745 ILCS 10/2—205, 3—104, 3—107(a) (West 1994). Thus, we turn to the familiar maxim of statutory construction that the "inclusion of one is the exclusion of all else." *Carter v. City of Elmwood*, 162 Ill. App. 3d 235, 237 (1987). The absence of language excepting wilful and wanton conduct in sections 2—201 and 3—108, where such language is contained in other sections, demonstrates that there is no exception for wilful and wanton conduct contained in sections 2—201 and 3—108. See *Payne*, 268 Ill. App. 3d at 787-88.

We recognize that many cases have found that there is an exception for wilful and wanton conduct. See *e.g., Barth v. Board of Education*, 141 Ill. App. 3d 266, 273 (1986) (relying on the decision in *McCormick v. Burt*, 95 Ill. 263 (1880)). However, the majority of the cases which have found the existence of an exception rely on the reasoning in *McCormick*, a case decided over 80 years before the enactment of the Immunity Act. Although wilful and wanton conduct was an exception to sovereign immunity under the common law (see *McCormick*, 95 Ill. at 266), the Immunity Act is in derogation of the common law and must be strictly construed (*Woodman v. Litchfield Community School District No. 12*, 102 Ill. App. 2d 330, 332-33 (1968)).

Thus, because sections 2—201 and 3—108 do not specifically contain an exception to immunity for wilful and wanton conduct, Island Lake's actions in hiring and retaining Rena, whether negligent or wilful and wanton, were wholly immunized by the Immunity Act.

382

## IV. DRAMSHOP CONTRIBUTION

■ We also agree that the trial court properly granted summary judgment in favor of Island Lake as to Mers' counterclaim for contribution. While we have already determined that Island Lake was not liable for hiring Rena, even if the opposite conclusion had been reached, Mers' counterclaim for contribution would have failed.

In order for a party to seek contribution, "[two] or more persons [must be] subject to liability in tort arising out of the same injury to person or property." 740 ILCS 100/2 (West 1994). However, a party who is liable pursuant to the Dramshop Act is not "liable in tort"; rather, liability pursuant to the Dramshop Act is exclusive, *sui generis* nontort liability. *Jodelis v. Harris*, 118 Ill. 2d 482, 486 (1987). Thus, courts have found that an intoxicated person who causes injuries to a third party is unable to seek contribution from another party liable only pursuant to the Dramshop Act. *Jodelis*, 118 Ill. 2d at 488.

Because an intoxicated person is unable to seek contribution from a dramshop defendant, we find no compelling rationale which would allow a dramshop defendant to seek contribution from other parties. Thus, the trial court properly granted defendant's summary judgment on Mers' counterclaim.

## V. RULE 220 EXPERTS

Lastly, plaintiffs argue that the trial court erred in striking Krajniak's testimony. Krajniak testified concerning certain events which had transpired between himself and Rena, which allegedly demonstrated Rena's violent propensities. Plaintiffs then attempted to inquire as to whether Krajniak thought that the ILPD had conducted a proper background check on Rena. Defendant objected, contending that such testimony was expert testimony, and plaintiffs had failed to disclose Krajniak as a Rule 220 expert witness (134 Ill. 2d R. 220).

Plaintiffs countered, alleging that Krajniak was testifying under subpoena and, thus, they were not aware of the substance of his testimony until the deposition. It should be noted that the trial court did not strike all of Krajniak's testimony, but only Kranjiak's testimony concerning whether he felt that the ILPD had conducted proper background checks.

■ The trial court had entered an order which mandated plaintiffs' disclosure of all Rule 220 witnesses by December 9, 1994. Rule 220(b)(1) requires the disclosure of all expert witnesses at the first pretrial conference or 90 days prior to trial. 134 Ill. 2d R. 220(b)(1). The rule requires the trial court to enter an order scheduling the dates upon which all expert witnesses shall be disclosed. 134 Ill. 2d R. 220(b)(1). The failure to make the disclosure required by the

rule will result in disqualification of the expert as a witness. 134 Ill. 2d R. 220(b)(1).

The determination of the appropriate sanction for the failure to comply with a discovery order lies within the sound discretion of the trial court. *James v. Yasunaga*, 157 Ill. App. 3d 450, 457 (1987). That decision will not be interfered with on review absent a clear showing of abuse, with each case resting on its own unique factual situation. *James*, 157 Ill. App. 3d at 457.

■ In the case at bar, plaintiffs failed to show that Island Lake's actions in hiring Rena were the proximate cause of Johnson's injuries. Kranjiak's testimony did not address proximate cause, and, thus, the trial court's refusal to consider Kranjiak's testimony was not an abuse of discretion and in no way prejudiced plaintiffs.

The order of the circuit court of Lake County which granted summary judgment in favor of Island Lake and against Johnson and Mers is affirmed.

Affirmed.

BOWMAN and THOMAS, JJ., concur.